## Moore *v.* Thomas Moore Distilling Co.

*Distillers—Certificates for whiskey—Duplicate certificates—Innocent holders—Respective rights.*

Certificates issued by a distiller for whiskey stored in his own warehouse are not warehouse receipts within the meaning of Acts of Sept. 24, 1866 (1867), P. L. 1363, and March 31, 1909, P. L. 19, relating to warehousemen; title to whiskey represented by certificates can be transferred by the distiller only when there is a completed contract between him and the purchaser evidenced by

payment of the consideration by the purchaser and delivery of the certificate to him; as between two innocent holders of certificates for the same whiskey the party who first paid the consideration therefor to the distiller will be entitled as against the bona fide holder of prior certificates issued without consideration, but purchased after the certificates of later date had been issued for value.

Argued Oct. 13, 1914. Appeals, Nos. 46, 47 and 48, Oct. T., 1914, by Fourth National Bank of Boston, Mass., and Fourth-Atlantic National Bank of Boston, Mass., its successor, from decree of C. P. Allegheny Co., Fourth T., 1910, No. 91, in equity, dismissing exceptions to report of auditor and master in case of C. P. Moore, W. E. Satler, K. Houserman, Raphael Jackson, Wormser Glass Company, and Robert Zugsmith v. The Thomas Moore Distilling Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Affirmed.

Bill in equity for the appointment of a receiver.

Exceptions to the report of auditor and master. Before SWEARINGEN, J.

From the record it appeared that the case was referred to J. C. Boyer, Esq., as master and auditor. Exceptions to his report were dismissed by the court. The exceptions involved three claims to certain whiskey in the bonded warehouse of the Thomas Moore Distilling Company, now in the hands of William E. Newlin, receiver, between the appellant bank on the one side, and the three appellees on the other side respectively.

The facts in re conflicting claim of S. Rosenbloom & Company were as follows: Some time prior to February 10, 1910 (the exact date nowhere appears in the testimony), the Thomas Moore Distilling Company made application to the Fourth National Bank of Boston, since merged with the Fourth-Atlantic National Bank, appellant, for the discount of a certain promissory note for $25,000, made by Weiler Bros., for the accommodation of the distilling company, dated February 5, 1910, payable six months after date, to the order of the dis-

tilling company, and endorsed by it. The collateral security offered by the distilling company were certificates, dated February 4, 1910, for 2,100 barrels of whiskey. The note was not discounted until February 11, 1910: on that date the appellant bank sent their check dated February 10, 1910, which was eventually paid to the distilling company. The whiskey certificates, offered by the distilling company as collateral, all recited that the whiskey therein described would be delivered to "Weiler Bros., or order," and were endorsed in blank by Weiler Bros. Excepting that the name of Weiler Bros, appeared upon the face of the note as the maker thereof, and in the body of and upon the back of the whiskey certificates, there is no testimony in the case to indicate that the bank knew anything about or regarded Weiler Bros in the matter, or, in fact, that Weiler Bros. had anything to do with the transaction. On February 7, 1910, before the appellant bank had discounted the note in question, the distilling company entered into a contract with S. Rosenbloom & Co., appellee, to sell them 350 barrels of whiskey. On February 8, 1910, S. Rosenbloom & Co. paid the purchase-price to the distilling company and received from it certificates under that date for the same whiskey represented by the certificates offered to the bank. The court below awarded the whiskey to S. Rosenbloom & Co.

The facts in re conflicting claim of Herman Hoechstetter were as follows: The claim of the appellant bank is based upon an accommodation note of Weiler Brothers to the order of the Thomas Moore Distilling Company and endorsed by it, dated December 28, 1909, for $12,-000, and discounted by the bank on December 31, 1909, having deposited therewith as collateral, inter alia, certificates for 250 barrels of whiskey. The certificates for 150 barrels bear dates between October 23 and October 30, 1909, and for 100 barrels the date is November 6, 1909. On November 6, 1909, the appellee made a loan of $6,000 to the distilling company upon a note of that

company in the like amount, with five certificates, dated November 6, 1909, for 500 barrels of whiskey, as collateral; these certificates were for the same whiskey offered to the bank. The court below awarded the whiskey in controversy to Herman Hoechstetter.

The facts in re conflicting claim of Wm. E. Newlin, receiver, were as follows: The claim of the appellant bank is based upon an accommodation note of Weiler Brothers to the order of the Thomas Moore Distilling Company and endorsed by it, dated December 28th, 1909, for $12,000, and discounted by the bank on December 31, 1909, having deposited therewith as collateral, inter alia, certificates bearing dates, respectively, October 9, 16 and 23, 1909, for 250 barrels of whiskey. On October 25, 1909, the First National Bank of Dolgeville made a loan of $2,500 to the distilling company upon a note of that company in like amount, with which were deposited as collateral three certificates, dated October 25, 1909, for the same 250 barrels of whiskey offered to the bank. The above note, together with the collateral, was purchased by the appellee receiver, November 18, 1912. The whiskey was awarded to Wm. E. Newlin, receiver.

In all of the foregoing transactions, both the appellant and the appellees were innocent parties without any knowledge of the fraud perpetrated by the distilling company.

The master and auditor's report, which was confirmed by the court below, inter alia, states: "The object of bonded distillery warehouses is to allow the distiller to store therein whiskey manufactured by him and defer the payment of the tax thereon until the whiskey shall have attained sufficient age to be sold for consumption; this arrangement is for the benefit of the distiller...... In the conduct of the distilling business throughout the country it is customary for the distillers to use certificates purporting on their face to be storage warehouse receipts, and these so-called warehouse receipts are sold

or pledged, as the case may be, and they are assumed to pass title......and to operate as a constructive or symbolic delivery of the whiskey......The Thomas Moore Distilling Company issued such......receipts, which stated in a general way that certain barrels of whiskey, designated by the government serial numbers given, were held in storage for the account of and to be delivered to the order of the party or parties named in the receipts. Some of these certificates were issued to outright purchasers who had bought and paid for the whiskey; others were pledged as security for money borrowed by the distilling company; and others were issued to C. P. Moore and to various other parties, from whom no consideration was received by the company, and were pledged for loans made either to the company or to the individuals named in the......receipts. It was soon discovered that more than one receipt had been issued for a great many of the barrels of whiskey on storage......In some instances whiskey had been sold outright, and then at a later date certificates for the same whiskey pledged as collateral security for money borrowed; in other cases certificates for whiskey had been pledged as collateral security for money borrowed, and later the same whiskey was sold outright and certificates issued therefor to parties who in good faith bought and paid in full for such whiskey." The master and auditor states the conclusion of law that "a distiller having his whiskey stored in his own bonded warehouse is not strictly a warehouseman under our acts of assembly," saying, "Our Supreme Court has in different cases defined a warehouseman to be, 'One who receives and stores goods as a business for a compensation or profit'......," and citing Bucher v. Com., 103 Pa. 528; Tradesmen's National Bank of N. Y. v. Kent Mfg. Co., 186 Pa. 556; National Union Bank of Reading v. Shearer, 225 Pa. 470. In discussing the subject, the master and auditor proceeds to say: "It is not contended by those who make claim either to own the whiskey in con-

troversy in this case or to have a lien thereon as pledgees, that there was actual physical or manual delivery of the whiskey; the whole case rests, therefore, upon the standing to be given to these......whiskey receipts. This matter has been laboriously and ably argued in the cases of Taney v. Penn Nat. Bank, 187 Fed. 689 (s. c. 232 U. S. 174); Pattison v. Dale, 196 Fed. 5, and Merchants Nat. Bank of Baltimore v. Roxbury Distilling Company, 196 Fed. 76. The cases cited have all been heard and decided by the United States courts; but inasmuch as the learned judges of those courts decided the cases in accordance with the laws of the respective states in which the several cases arose, one of them being our own State, and inasmuch as these decisions are, to a degree at least, supported by decisions of our own State courts in the cases of Bucher v. Commonwealth, 103 Pa. 528; Tradesmen's Nat. Bank of N. Y. v. Kent Mfg. Co., 186 Pa. 556; National Union Bank of Reading v. Shearer, 225 Pa. 470; Keil v. Harris, 4 Sadler 201; Miller v. Browarsky, 130 Pa. 372; Rosenham v. Batjer, 154 Pa. 544, the master feels bound to follow these cases, and therefore, finds that the........receipts, are effective to pass title to the whiskey, either to purchasers or to pledgees of the same........It is the receipt first bona fide delivered upon proper consideration, however, which carries the title to the whiskey; and this, regardless of the date which the different certificates may bear." The master and auditor also cites Block v. Oliver, 102 Ky. 269; and finally he says, "It seems to the master and auditor that successive sales and pledges of the same whiskey by the issuing of duplicate or successive......receipts therefor is analogous to the overissuing of capital stock by the officers of a corporation. In the case of an over issuing of stock it has been repeatedly held that the corporation is liable in damages to the party who may suffer by reason of coming into possession of some of the overissued stock,

either as purchaser or pledgee; but nowhere has it been held that such stock is good stock (Kisterbock's App., 127 Pa. 601)." The master and auditor states these conclusions: "The......receipts first bona fide delivered upon valuable consideration are effective to pass title to the whiskey described therein. The......receipts first bona fide delivered to pledgees for valuable consideration are effective to vest such pledgees with constructive possession of the whiskey described therein, as security for advancements made upon consideration thereof, and to vest such pledgees with legal written title to the whiskey so pledged. The pledgees of these original ......receipts have the first lien on the fund derived from the sale by the receiver of the whiskey described in such receipts to the amount of their respective claims. Any balance remaining from the fund derived from such sale in excess of the amount necessary to satisfy such liens shall become a part of the general fund in the hands of the receiver, to be distributed among the unsecured creditors; and such pledgees are entitled to participate in the general fund in any cases where the proceeds of the sale of the whiskey pledged may not be sufficient to pay in full the claims of such pledgees. Bona fide holders, even upon sufficient consideration, of duplicate or successive......receipts, whether claiming as purchasers or pledgees, have no title to or interest in the whiskey described in such...... receipts, and such holders of duplicate or successive ......receipts have no lien upon the fund derived from the sale of the whiskey described therein, but are general creditors (to the amount of the loss suffered by them)."

Exceptions to the findings of fact and conclusions of law of the master and auditor were dismissed. The Fourth National Bank of Boston, Mass., and Fourth-Atlantic National Bank of Boston, Mass., its successor, appealed.

*Errors assigned* were in dismissing the exceptions and the decree of the court.

*William M. Hall,* for appellants.—The issuing of the whiskey certificates was sufficient to transfer title to the whiskey represented thereby.

As the distilling company is estopped from alleging want of consideration for the certificates issued by it when they are in the hands of innocent purchasers for value, purchasers from the distilling company whose rights to the property in question rise no higher than their vendor are likewise stopped: McMahon v. Sloan, 12 Pa. 229; Quinn v. Davis, 78 Pa. 15.

The whiskey certificates were warehouse receipts within the meaning of the Pennsylvania statute, relating to warehousemen and are therefore negotiable instruments. No secret arrangement between a distilling company and Rosenbloom & Company can affect the rights of a purchaser for value of the certificates first issued: National Union Bank of Reading v. Shearer, 225 Pa. 470; Amer. Pig Iron Storage Warrant Co. v. Iron & Coal Co., 205 Pa. 411. Even though the receipts were issued without consideration innocent purchasers for value thereof are not affected by any want of consideration and their title relates back to the date of issue thereof: Shaw v. Levy, 17 S. & R., 99; Lee v. Byers, 2 Chest. County 134; Thompson v. M'Kean, 1 Ash. 129; Sinclair v. Healy, 40 Pa. 417; Mateer v. Hissim, 3 P. & W. 160; Hood v. Fahnestock, 8 Watts 489; Thompson v. Lee, 3 W. & S. 479.

The Supreme Court of the United States has decided that he who honestly gets whiskey certificates has perfect title and right of possession: Taney v. Penn National Bank, 232 U. S. 174; Dale v. Pattison, 234 U. S. 399.

*John T. Moore,* for S. Rosenbloom & Company, appellee.—A whiskey certificate issued by a distiller for

whiskey stored in his own warehouse is not a warehouse receipt within the meaning of Acts of September 24, 1866 (1867), P. L. 1363, and March 31, 1909, P. L. 19: Tradesmen's Nat. Bk. of New York v. Kent Mfg. Co., 186 Pa. 556; Moors v. Jagode, 195 Pa. 163; Taney v. Penn National Bank, 187 Fed. 689.

The mere delivery of a whiskey certificate issued by a distiller, for whiskey stored in his own warehouse is not effective to pass title to the whiskey represented thereby when there has been no physical delivery of the whiskey or payment of the consideration: Taney v. Penn National Bank, 232 U. S. 174; Brown v. Dickerson, 42 Atl. Repr. 421; Gross v. Arnold, 52 N. E. Repr. 867.

*Elias Sunstein,* with him *Joseph Stadfeld,* for Herman Hoechstetter, appellee.—The distilling company was not a warehouseman and the whiskey certificates were not negotiable instruments: Bucher v. Com., 103 Pa. 528; Tradesmen's Nat. Bank of New York v. Kent Mfg. Co., 186 Pa. 556; National Union Bank v. Shearer, 225 Pa. 470; Miller v. Browarsky, 130 Pa. 372; Taney v. Penn National Bank, 187 Fed. 689.

The title derived under whiskey certificates must be determined by the general law relating to the sale or pledge of personal property; the certificate first bona fide delivered for valuable consideration will carry title to the whiskey.

*Robbin B. Wolf,* with him *A. M. Simon,* for Wm. E. Newlin, receiver, appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 2, 1915:

In this case a master and auditor was appointed, by consent of the several parties in interest, to pass upon all questions relative to the ownership of certain whiskey in the bonded warehouse of the Thomas Moore Distilling Company, and to make distribution of a fund in

the hands of its receiver derived from sales of this liquor; three separate claims of the Fourth National Bank of Boston, now merged with and known as the Fourth-Atlantic National Bank of Boston, were refused, and it has appealed in each instance. The three appeals were argued as one; and, since there are certain controlling principles common to all, we shall dispose of them together.

The master and auditor filed a most elaborate opinion, certain portions of which will be printed in connection herewith; these abstracts, together with a statement of the material facts relevant to each of the three appeals, which likewise will appear in connection with the report of this case, and the excerpts which we are about to quote from the opinion of the court below, practically cover the questions involved. The court below states:

"The Thomas Moore Distilling Company was a corporation, organized under the laws of Pennsylvania, for the purpose of manufacturing and selling distilled spirits. Its principal place of business was in......, Pennsylvania. It maintained bonded warehouses......, wherein was stored the whiskey which it had manufactured, pending the payment of the taxes thereon to the United States government. On the 25th day of July, 1910, a receiver was appointed for said corporation, it being at that time insolvent. The receiver in due course filed his first account. Disputes had arisen among various claimants of the whiskey, which was in storage. All of the whiskey, to which reference is hereinafter made, was sold by the receiver, with the consent of the parties, and the rights of the respective claimants were transferred to the proceeds......"

"The first dispute is respecting the ownership of 350 barrels of whiskey; these are claimed by the Fourth National Bank of Boston, and by S. Rosenbloom and Company......Certificates for these barrels of whiskey, identified by serial numbers, were issued by the distilling company to a firm named Weiler Brothers; they were

dated February 4, 1910. Probably on February 5, 1910, the distilling company applied to the Fourth National Bank of Boston for the discount of a note in the sum of $25,000, dated February 5, 1910, made by said Weiler Brothers to the order of the Thomas Moore Distilling Company, and by the latter endorsed. The collateral security offered for this note included the aforesaid certificates for 350 barrels of whiskey. The application was not then accepted by the bank, it desiring to first ascertain whether or not the storage charges had been paid. On February 11, 1910, the note was accepted for discount, and on that date the bank paid the proceeds thereof to the order of the Thomas Moore Distilling Company, and the money reached the latter in due course on or about February 14, 1910. Meantime, on February 8, 1910, S. Rosenbloom and Company purchased from the Distilling Company 350 barrels of whiskey and received therefor certificates for the very same barrels which were described in the said certificates issued to Weiler Brothers, dated February 4, 1910, and now held by the Fourth National Bank of Boston. On the same day, to wit: February 8, 1910, S. Rosenbloom and Company paid the distilling company in full for said whiskey. The whiskey was never removed from the warehouse of the distilling company, and it passed into the possession of its receiver, when he was appointed. Thus, there are two claimants for the same barrels of whiskey. They are both innocent, there being no finding that either the bank or S. Rosenbloom and Company knew anything about the fraud that was perpetrated."

"The master awarded these 350 barrels to S. Rosenbloom and Company, because, as he held, that firm had the title to said whiskey and had the better title thereto as against the Fourth National Bank of Boston. Exceptions to these rulings have been filed......by the ......bank......upon the ground that,......its certificates were prior in date to those of S. Rosenbloom and Company and it had made advancements thereon bona

fide......The bank contends that, having entered into negotiations on February 5th with the distilling company and having accepted the proposition and paid its money innocently on February 11th, its title related back to February 4th, the date of its certificates, and is therefore better than that of S. Rosenbloom and Company. It reasons that the issuing of the certificates was sufficient to pass title, that the distilling company had thereafter no title which it could transfer, and that any subsequent transferee took only what the distilling company could convey, which was nothing as against the bank, an innocent pledgee." In expressing its disagreement with these contentions, the court below holds that the certificates issued by the distilling company, although, under some circumstances, capable of passing title to the whiskey, were not "warehouse receipts within the purview of the statutes of Pennsylvania," saying, "The distilling company was not a warehouseman within the meaning of the law......; there is no statute which authorizes distillers to issue storage warehouse receipts, they have been accustomed to issue them, for convenience, and, when issued, such receipts have been generally recognized in commercial transactions and by the courts as efficacious to transfer title to the whiskey therein described." The court then adds, with reference to the present case, this important query: "But, at what time did the title pass?"

In answering the query just stated, the opinion continues thus: "The question here presented is not one of liability in damages, on the part of the distilling company—it is a question of title to specific goods as between two innocent claimants......; something more than the mere issuing of a certificate is necessary—title can only pass by this symbolical delivery when there is a completed contract between the purchaser or pledgee and the distilling company, and this can only arise upon payment of the consideration and delivery of the symbol of the property. It requires the act of both parties to

consummate the contract, and it is only by the creation of mutual legal obligations that a transfer of title to the goods can result......It must be conceded that no contract existed between the distilling company and the bank, prior to February 11, 1910. It is true, the application for discount of the note was made on February 5th, but it was not accepted until February 11th; therefore, no binding contractual relations existed between the parties until the latter date, upon the familiar principle that the acceptance of a proposition is what constitutes a contract. Prior to February 11th, either party might have withdrawn, for neither was obligated to the other; it follows that, upon that date, the rights of the bank accrued. Upon that date, and not sooner, the bank could have demanded from the distilling company the delivery of the barrels of whiskey described in the certificates which it held. But, between February 5th, the date of the application for discount of the note, and February 11th, the date of acceptance of the proposition, to wit, on February 8th, S. Rosenbloom and Company had purchased and paid for the very same barrels of whiskey and had received the certificates therefor from the distilling company......The rights of S. Rosenbloom and Company accrued on February 8, 1910, on that date they made their agreement, they paid the price and they received the certificates for the goods, and everything was then done that was necessary to complete a transfer of the title......; hence, their right to this whiskey accrued three days earlier than that of the bank, and when the latter subsequently closed its contract, the distilling company had no title to convey. We are of opinion that the maxim, 'Prior tempore, potior jure,' applies......, and......are therefore obliged to hold......that, as between these innocent claimants, S. Rosenbloom and Company have the title to the 350 barrels of whiskey. The ruling upon this dispute governs in the disposition of the controversies between the ......bank and Herman Hoechstetter, respecting 250

barrels; ...... and W. E. Newlin, receiver, respecting 250 barrels......; the same questions are involved in all of the said cases."

The foregoing excerpts from the opinion of Judge SWEARINGEN dispose correctly of most of the important points presented to us, and little need be added. After a close study of the argument of the able counsel for the appellant, we feel that the weakness of his position lies in the fact that he gives to the certificates issued by the distilling company all the attributes of warehouse receipts, whereas, under the laws of the United States, a whiskey warehouse is intended for the benefit of the distiller and for the storage of his own goods, and this court has ruled [Tradesmen's Nat. Bk. of New York v. Kent Mfg. Co., 186 Pa. 556, 563] that our Warehousing Act contemplates a warehouseman as one engaged in the business of receiving and storing goods of others, that is to say—he, the warehouseman, "shall (always) be another than the owner of the goods"; adding, "a large part of the security of the holder of a receipt for the actual production of the goods when called for is the business interest and good faith of the warehouseman and the penal consequences of any breach of duty by him; and this security would be diminished greatly, if not rendered worthless, if an owner could choose to say his goods were on storage with himself and issue receipts which should pass from hand to hand for value, while the goods remained under his control and subject to levy by his creditors."

We agree with the conclusion reached below—that these whiskey certificates are not the equivalent of warehouse receipts and that, while, under the authorities, the passing of such a certificate may be sufficient to show a symbolical delivery of the article therein described, yet, the title to the whiskey must be determined by the general law relating to the sale or pledge of personal property, and the delivery indicated by the possession of the certificate is only good as of the time when an actual

valuable consideration passed between the parties to the transaction; and we further agree that the certificate first bona fide delivered for a valuable consideration carries the title to the goods which it covers as against duplicate certificates bearing earlier dates but delivered for value at a later time.

There is only one other feature of the case which calls for discussion. To begin with, we must acquiesce in the facts as stated by the master and auditor, for in no instance has the appellant demonstrated clear error therein; next, we must accept the inferences that naturally flow from these facts; and finally, we cannot sustain contentions which depend upon facts not found or facts which cannot naturally be inferred from those found. When we keep these guiding principles in mind, it appears that on each occasion the bank dealt directly with the distilling company and paid the proceeds of the note to it, so far as the record shows, there being no dealings with Weiler Brothers, the makers of the paper, yet, nevertheless, the appellant argues its case as though Weiler Brothers always had possession of the whiskey certificates and the loans from the bank had been directly to them. All the testimony has not been printed, and the record, as brought to us, does not disclose the details of the transactions between the makers and endorsers of these notes; but there is some evidence to the effect that the certificates in question were simply loaned to Weiler Brothers by the distilling company. If the whiskey certificates were ever actually in the possession of Weiler Brothers, they must have returned them to the distilling company, for all the circumstances in the case point to that conclusion and indicate that the certificates were in the company's possession and control when the bank agreed to discount the notes and when it actually paid over the money. The master and auditor found that no consideration whatever passed between the parties to these notes at the time they were signed; the appellant argues, however, that the whiskey certificates were

originally intended as an indemnity to Weiler Brothers for the loan of their credit to the distilling company, and that this loan of credit was a sufficient consideration to support a transfer of the whiskey to that firm and establish the validity of the certificates. Appellant has pointed to no evidence to sustain the position thus taken; but should we assume the fact to be as asserted, still, since none of the notes was intended to take effect until actually accepted by the bank, there would be no valuable consideration present to support a passing of the whiskey until the discount of the notes; and on the respective discount dates, in each instance, as already indicated, not only were the certificates back in the possession of the distilling company, but prior thereto that company had, in each instance, for a valuable consideration actually paid to it by other parties, issued duplicate certificates covering the same whiskey to the several purchasers or pledgees thereof. Under the circumstances, even though the certificates held by the bank were first issued to Weiler Brothers, yet, as against the certificates subsequently issued by the distilling company and bona fide delivered for a valuable consideration to other parties before the bank paid over its money, these earlier certificates cannot serve to defeat the title passed by the later ones and now vested in the present appellees; on the principle controlling this point, in addition to Block v. Oliver, 102 Ky. 269, and the other cases cited by the master and auditor, see Crawford v. Dollar Savings Fund & Trust Co., 236 Pa. 206, 210.

In conclusion, it must be borne in mind that, in matters such as we have before us, the Supreme Court of the United States has recognized that the "legal effect of the transaction depends upon the local law" [Taney v. Penn Bank, 232 U. S. 174, 180], and we must further remember that Pennsylvania differs from jurisdictions like Maryland [Merchants Nat. Bk. v. Roxbury Distilling Co., 196 Fed. 76], in that we have no statute expressly making whiskey certificates "negotiable instru-

328 MOORE *v.* THOMAS MOORE DISTILLING CO.

Opinion of the Court.          [247 Pa.

ments." While, perhaps, none of the authorities cited by the master and auditor, or referred to by us, rules the case at bar, yet each of them contains enlightening discussion on the principles here involved. Finally, it may be well to state that the record before us shows no evidence of laches, as in Miller v. Browarsky, 130 Pa. 372, to defeat the claims of the respective appellees.

The assignments of error are all overruled, and the decree is affirmed.