## Whisky Certificates

BARD, Attorney General, May 27, 1938. — You have asked to be advised on the following two questions:

1. Whether whisky certificates, also known as warehouse receipts for distilled spirits in bond, come within the definition of securities in the Pennsylvania Securities Act, and whether the Pennsylvania Securities Commission has control over the offering for sale of such whisky certificates within the Commonwealth of Pennsylvania?

2. Whether the activities of vendors of whisky certificates, who solicit security owners to induce and effect a switching of their securities for whisky certificates, also known as warehouse receipts for distilled spirits in bond,

make such vendors dealers in, or salesmen of, securities in the Commonwealth of Pennsylvania?

Section 2(a) of The Securities Act of April 13, 1927, P. L. 273, defines a "security" as follows:

"(a) The terms 'security' or 'securities' shall include any bond, stock certificate under a voting trust agreement, treasury stock, note, debenture, certificate in or under a profit-sharing or participation agreement, subscription or reorganization certificate, oil, gas or mining lease or certificate of any interest in or under the same, evidence of indebtedness, or any certificate or instrument representing or secured by an interest in the capital, assets or property of any corporation, unincorporated organization, association, trust, or public corporation or body, or any other instrument commonly known as a security."

Whisky certificates, also known as warehouse receipts for distilled spirits in bond, are issued by distillers as a means of financing their operations. These certificates are generally recognized in commercial transactions and by the courts as efficacious to transfer title to the specific whisky described therein. We have no statute in Pennsylvania expressly making whisky certificates negotiable instruments, and title to the specific whisky described in the certificate passes at the time of delivery of the certificate for a valuable consideration: Taney v. Penn National Bank of Reading, 187 Fed. 689, sustained by the Supreme Court in 232 U. S. 174.

In the case of Moore v. Thomas Moore Distilling Co., 247 Pa. 312 (1915), the Supreme Court sustained the lower court in holding that whisky certificates for whisky stored in bond in a distiller's warehouse are not the equivalent of warehouse receipts within the meaning of the Acts of September 24, 1866, P. L. (1867) 1363, and March 11, 1909, P. L. 19, relating to warehousemen.

A whisky certificate is merely an evidence of ownership of specific personal property and, therefore, cannot be held a security under the provisions of The Securities

Act, supra. If the legislature had intended to include these certificates, also known as warehouse receipts for distilled spirits in bond, in the category of securities, it should have provided therefor in unmistakable language, which it failed to do.

This conclusion places upon the General Assembly the responsibility of defining these certificates as securities, or providing adequate legislation for their sale and distribution under supervision of the Pennsylvania Liquor Control Board.

Since a whisky certificate is not a security within the meaning of The Securities Act, it follows that the Pennsylvania Securities Commission is without authority to regulate the offer and sale of such certificates.

2. Whether the activities of vendors of whisky certificates, who solicit security owners to induce and effect a switching of their securities for whisky certificates, also known as warehouse receipts for distilled spirits in bond, make such vendors dealers in, or salesmen of, securities in the Commonwealth of Pennsylvania?

We are mindful of the limitless possibilities for the use of these whisky certificates as instruments of fraud in the hands of unscrupulous persons. You inform us that these certificates have been indiscriminately sold to purchasers who have little or no knowledge of what they are purchasing, or the trouble or obligations attendant upon the securing of possession of the whisky. These certificates have been offered to the public in Pennsylvania at highly inflated prices, ranging from $65 to $100 a barrel for whisky worth at the outside $30 a barrel. The vendors of these certificates operate from lists of security owners who are the holders of securities for the most part in corporations which have had financial difficulties and have reduced the payment of dividends. The holders of these securities are solicited by the vendors of whisky certificates, the value of their securities is discussed and ways and means of recouping losses are explained as be-

ing made effective by permitting the vendor to dispose of the securities and using the proceeds to purchase warehouse certificates. Fabulous future profits in the enhancement of the value of the whisky certificates are assured the holders of securities as an inducement to prevail upon the prospective victims to convert their securities. The vendor of the whisky certificates receives the securities from his victim and arranges for their disposition, crediting the account of his victim with the cash realized from the sale of the securities in payment for the whisky certificates.

Section 2 (c) of The Securities Act, supra, defines "dealer" as follows:

"(c) The term 'dealer' shall include every person or entity, other than a salesman who engages in this State, either for all or part of his or its time, directly or through an agent, in selling, offering for sale or delivery, or soliciting subscriptions to, or orders for, or undertaking to dispose of, or to invite offers for, or inquiries about, or dealing in, any manner in any security or securities within this State, including securities issued by such entity."

Section 2 (d) of The Securities Act defines "salesman" in the following language:

"(d) The term 'salesman' shall, except as provided in section four, include every person or company employed or appointed or authorized by a dealer to sell, offer for sale or delivery, or solicit subscriptions to or orders for, or dispose of inquiries about, or deal in any manner in, securities within this State, whether by direct act or through subagents."

Section 2 (f) of The Securities Act defines "fraud" as follows:

"(f) The terms 'fraud,' 'fraudulent,' 'fraudulent practice,' shall include any misrepresentation, in any manner, of a relevant fact not made honestly and in good faith; any promise or representation or predication as to the future not made honestly and in good faith, or an inten-

tional failure to disclose a material fact, the gaining, directly or indirectly through the sale of any security, of an underwriting or promotion fee or profit, selling or managing commission or profit so gross and exorbitant as to be unconscionable and fraudulent; and any scheme, device or other artifice to obtain such a profit, fee, or commission: Provided, however, That nothing herein shall limit or diminish the full meaning of the terms 'fraud' and 'fraudulent' as applied or accepted in courts of law or equity."

Section 3 of The Securities Act requires dealers and salesmen to be registered and is here quoted:

"No dealer shall, by direct solicitation, or through agents or salesmen, or by letter, telephone, telegraph, circular, or advertising, sell, offer for sale, tender for sale or delivery, or solicit subscriptions to, or orders for, or dispose or undertake to dispose of, or invite offers for or inquiries about, any securities within this State, without first being registered as in this act provided. No salesman or agent shall, in behalf of any dealer, sell, offer for sale, tender for sale or delivery, or solicit subscriptions to or orders for, or dispose or undertake to dispose of, or invite offers for or inquiries about, any securities within this State, unless registered as a salesman or agent of a dealer under the provisions of this act. The list of dealers, agents or salesmen registered under the provisions of this act, shall at all times be open to the public."

Section 22 of The Securities Act provides for violations as follows:

"Section 22. Any dealer, agent, salesman, principal, officer, or employe, who shall, within this State, sell, offer for sale or delivery, solicit subscriptions to or orders for, dispose of, invite offers for or inquiries about, or who shall deal in any manner in, any security or securities, without being registered as in this act provided, or who makes any false statement of fact in any statement or matter of information required by this act to be filed with the commission, or any advertisement, prospectus,

letter, telegram, circular, or in any other document, containing an offer to sell or to dispose of, or in or by verbal or written solicitation to purchase, or in any commendatory matter concerning any securities, with intent to aid in the disposal or purchase of the same, or who makes any false statement or representation concerning any registration made under the provision of this act, or who is guilty of any fraud or fraudulent practice, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine of not more than five thousand dollars ($5,000.00), or imprisonment for not more than two years, or both. Any dealer, officer, agent, salesman, principal, officer, or employe who shall commit, in whole or in part, any other act declared unlawful by this statute, shall be guilty of a misdemeanor, and, upon conviction therof, shall be sentenced to pay a fine of not more than one thousand dollars ($1,000.00), or imprisonment for not more than one year, or both."

In Commonwealth v. Moore, 5 D. & C. 738, the court, in discussing The Securities Act, said:

"The purpose of the Securities Act is to regulate the business of dealing in stocks, bonds and other securities defined therein for the protection of the public against fraud. It is a police regulation of the same general class with statutes regulating the practice of the professions, the business of insurance, peddling, ticket selling, etc., which have been from time to time sustained as valid exercises of the police power of the State."

The securities of the public which vendors of whisky certificates undertake to dispose of to effect exchange for whisky certificates are securities within the definition of section 2(a) of The Securities Act.

These vendors of whisky certificates, in undertaking to dispose of, inviting inquiries about, or dealing in any manner with the securities of the public of Pennsylvania in order to provide cash for the payment of whisky certificates, also known as warehouse receipts for distilled spirits in bond, are dealing in securities within the mean-

ing of The Securities Act, and such dealers and their salesmen are obliged to register and comply with the provisions of The Securities Act.