Day, J.
 

 The record discloses that the trial judge, in his instructions to the jury, charged that the rights of the parties were to be determined by the provisions of Sections 8360 and 8361, General Code, parts of the Factors ’ Act.
 

 The Court of Appeals reversed the judgment of the trial court on the ground that the wrong statutes were applied to the issues in the case; that Sections 8360 and 8361, General Code, insofar as they are applicable to warehouse receipts, have been repealed by implication by the subsequent enactment of Sections 8503, 8505 and 8508, General Code, parts of the Uniform Warehouse Eeceipts Act (Sections 8457 to 8509, inclusive, General Code); and that, therefore, the trial court should have determined the issues of this cause pursuant to the provisions of Sections 8503, 8505 and 8508, General Code.
 

 Appellant herein denies that there was any such repeal and contends that the trial court applied the correct statutes.
 

 Section 8360, General Code, provides: “Every factor or other agent, intrusted with the possession of a bill of lading, custom-house permit, or warehouse-keeper’s receipt for the delivery of any such merchandise, and every such factor or agent, not having the documentary evidence of title, intrusted with the possession of merchandise for the purpose of sale, or as a security for advances to be made or obtained thereon, shall be deemed to be the true owner thereof, so far as to give validity to any contract made by such agent with any other person for 'the sale or disposition of the whole or any part of such merchandise, for any
 
 *403
 
 money advanced or negotiable instrument, or other obligation in writing, given by such other person upon the faith thereof.”
 

 Section 8361, General Code, provides: “Every person who accepts any such merchandise on deposit from any such agent, as security for any antecedent debt or demand, shall not thereby acquire or enforce any right or interest in or to such merchandise or document, other than was possessed or might have been enforced by such agent, at the time of such deposit.”
 

 Section 8503, General Code, reads as follows: “The validity of the negotiation of a receipt is not impaired by the fact that such negotiation was a breach of duty on the part of the person making the negotiation, or by the fact that the owner of the receipt was deprived of the possession of the same by loss, theft, fraud, accident, mistake, duress or conversion, if the person to whom the receipt was subsequently negotiated, paid value therefor in good faith, without notice of the breach of duty, or loss, theft, fraud, accident, mistake, duress or conversion.”
 

 Section 8505, General Code, provides: “When a negotiable receipt has been issued for goods, no seller’s lien or right of stoppage
 
 in trcmsitu
 
 shall defeat the rights of any purchaser for value in good faith to whom such receipt has been negotiated, whether such negotiations be prior or subsequent to the notification to the warehouseman who issued such receipt of the seller’s claim to a lien or right of stoppage
 
 in transitu.
 
 Nor shall the warehouseman be obliged to deliver or justified in delivering the goods to an unpaid seller unless the receipt is first surrendered for cancellation.”
 

 Section 8508, General Code, provides:
 

 “In this chapter [Sections 8457 to 8509, General Code] unless the context or subject-matter otherwise requires- — - * * *
 

 “ ‘Holder’ of a receipt means a person who has both actual possession of such receipt and a right of property thereon. * *
 
 *
 

 
 *404
 
 “ ‘Value’ is any consideration sufficient to support* a simple contract. An antecedent or preexisting obligation, whether for money or not, constitutes value where a receipt is taken either in satisfaction thereof or as security therefor.
 

 “ ‘Warehouseman’ means a person lawfully engaged in the business of storing goods for profit.
 

 “A thing is done ‘in good faith’ within the meaning of this chapter, when it is in fact done* honestly, whether it be done negligently or not.”
 

 Section 8497, General Code, provides:
 

 “A person to whom a negotiable receipt has been duly negotiated acquires thereby:
 

 “1. Such title to the goods as the person negotiating the receipt to him had or had ability to convey to a purchaser in good faith for value, and also such title to the g*oods as the depositor or person to whose order the goods were to be delivered by the terms of the receipt had or had ability to convey to a purchaser in good faith for value
 
 *
 
 *
 

 The controlling question presented is this: Where one intrusted with the possession of merchandise on consignment to him from its owner places it in a warehouse and obtains negotiable warehouse receipts therefor and thereafter pledges them to a bank as collateral security for a promissory note or notes, and the bank subsequently takes possession of the merchandise under such warehouse receipts, does the bank have title to such merchandise superior to that of the consignor ?
 

 Under the provisions of Sections 8360 and 8361, General Code (enacted in 1844 as parts of an act “to prevent fraudulent practices,” 42 Ohio Laws, 49), a factor or other agent, intrusted with the' possession of merchandise for the purpose of sale, is to be deemed the true owner thereof, and any disposition which he may make of such merchandise (whether by actual delivery of the merchandise or by delivery of a document
 
 *405
 
 of title thereto), and any contract which he may make with respect thereto, are valid; hut if he deposits such merchandise or document of title thereto in pledge as security for an antecedent debt or demand, the pledgee “shall not thereby acquire or enforce any right or interest in or to such merchandise or document, other than was possessed or might have been enforced by such agent, at the time of such deposit.” Section 8361, General Code. In other words, in such case, the pledgee acquires whatever title the factor or agent had, subject to all the equities which the consignor of the merchandise had against such factor or agent with respect thereto.
 

 Under the Factors’ Act, a factor or other agent, intrusted with the possession of merchandise for the purpose of sale, is deemed to be the true owner thereof, and any disposition which he may make of it, and any contract which he may make with respect thereto, are valid. There is nothing in the Uniform Warehouse Receipts Act (enacted in 1908, 99 Ohio Laws, 400) which conflicts with this provision. The difference, however, is that under the Uniform Warehouse Receipts Act if a factor or other agent pledges such goods or negotiable document of title thereto as collateral security for “value” (as that term is defined in Section 8508, General Code), the pledgee, who in good faith acquires such goods or document of title, does so free from any and all equities of the consignor.
 

 In Section 8507, General Code, it is provided that: “This chapter [Uniform Warehouse Receipts Act] shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.”
 

 In discussing the above-quoted language, Mr. Justice Hughes, in the case of
 
 Commercial National Bank of New Orleans
 
 v.
 
 Canal-Louisiana Bank & Trust
 
 Co., 239 U. S., 520, 60 L. Ed., 417, 36 S. Ct., 194, stated that: “It is apparent that if these uniform acts are con
 
 *406
 
 strued in the several states adopting them according to former local views upon analogous subjects, we shall miss the desired uniformity and we shall erect upon the foundation of uniform language separate legal structures as distinct as were the former varying laws. It was to prevent this result that the Uniform Warehouse Receipts Act expressly provides (Section 57): ‘This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.’ This rule of construction requires that in order to accomplish the beneficent object of unifying, so far as this is possible under our dual system, the commercial law of the country, there should be taken into consideration the fundamental purpose of the uniform act, and that it should not be regarded merely as an off-shoot of local law. The cardinal principle of the act — which has been adopted in many states — is to give effect, within the limits stated, to the mercantile view of documents of title. There had been statutes in some of the states dealing with such documents, but there still remained diversity of legal rights under similar commercial transactions. We think that the principle of the uniform act should have recognition to the exclusion of •any inconsistent doctrine which may have previously obtained in any of the states enacting it * *
 

 Where one intrusted with the possession of merchandise on consignment to him from its owner places it in a warehouse and obtains negotiable warehouse receipts therefor and subsequently pledges them to a bank as collateral security for a promissory note or notes, and the bank thereafter takes possession of the merchandise under and by virtue of such warehouse receipts, the title of the bank to such merchandise is superior to that of the consignor.
 

 It is our opinion that the Uniform Warehouse Receipts Act is the one. which governs and is determinative of the issues in this case.
 

 
 *407
 
 Appellant argues that, without its knowledge, Union Grocers, Inc., deposited the consigned merchandise “in an alleged warehouse company, which had been organized by the officers of the grocery company, and obtained from said alleged warehouse company, warehouse receipts for the merchandise; or procured the issuance of such receipts without actually making the deposit”; that “the president of the warehouse company and the president of the grocery company were the same person; that there was a substantial identity between the directors and officers of the grocery company and those of the warehouse company; that the warehouse company had no quarters of its own, but merely occupied some of the space leased by the grocery company from the owner of the building in which the grocery company carried on its business; * * * that warehouse receipts could be issued and signed by the president of the warehouse company, who was also the president of the grocery company, as well as by one of the officers of the warehouse company. ’ ’
 

 Appellant further argues that “the grocery company organized the warehouse company for the purpose of affording means of financing the grocery company’s business by creating an agency which would enable the grocery company to deposit goods, get a warehouse receipt and obtain loans on the strength of a pledge of the warehouse receipts”; that in the face of these facts it cannot be said that a real
 
 bona fide
 
 warehouseman existed who could issue warehouse receipts; that there was fraud in the creation of the warehouse receipts; that they were therefore void
 
 ab initio;
 
 that such receipts cannot pass title even to a
 
 bona fide
 
 purchaser for value, or holder in due course; and that, consequently, appellee obtained no title to the goods covered thereby.
 

 It is sufficient answer to say that if the appellee acted in good faith, in ignorance of the true state of
 
 *408
 
 affairs between appellant and its consignee, it is wholly immaterial that the consignee violated the terms of the consignment agreement, or committed a fraud upon or abused the confidence reposed in it by appellant, the consignor. By placing the merchandise in possession of the Union Grocers, Inc., with authority to sell, appellant made it possible for that company to deal with the consigned merchandise in the manner it did. Appellee was wholly without fault or blame, having had neither actual nor constructive notice or knowledge of the relationship between appellant and the Union Grocers, Inc. So far as appellee knew or had reason to believe, the Union Commercial Warehouse Company was a
 
 bona fide
 
 warehouse- company. The warehouse receipts issued to Union Grocers, Inc., were negotiable, regular on their face and properly endorsed to appellee. There was nothing therein which in any way indicated, or tended to indicate, that the Union Grocers, Inc., was not the owner of the merchandise, or that the warehouse company was not
 
 bona fide.
 
 Appellee was an innocent party. True, appellant was likewise an innocent party. However, it was appellant’s confidence in its own consignee which was betrayed, and this betrayal was made possible by the means which appellant had entrusted to its consignee. It is in such case as this that the maxim “he who trusts most must suffer most” finds application.
 

 As stated in 35 Ohio Jurisprudence, 816, Section 96: “The seller is always in a position to protect himself by making a selection of a proper bailee; the buyer can only judge from the appearances as he sees them.”
 

 We hold that where a consignee is intrusted by a consignor with the possession of merchandise for purposes of sale, with authority to pass title thereto, and the consignee, in violation of the trust and confidence reposed in him, deals with the consigned merchandise fraudulently and disposes of it to an innocent purchaser for value, without notice, in a manner not
 
 *409
 
 authorized hy the consignment agreement, the consequences of such wrongdoing must fall upon the consignor who voluntarily furnishes the consignee with the means of such wrongdoing, rather than upon the innocent third party.
 

 Judgment affirmed.
 

 Weygandt, C. J., Zimmerman, Turner, Williams, Matthias and Hart, JJ., concur.