**GOULD et al.**
**v.**
**CITY BANK & TRUST CO.**
No. 6776.

United States Court of Appeals,
Fourth Circuit.
Argued April 9, 1954.
Decided May 10, 1954.

Bernard J. Russell, Baltimore, Md. (Rome & Rome, Baltimore, Md., on the brief), for appellants.

Seymour O'Brien, Baltimore, Md. (Harrison L. Winter and Miles & Stockbridge, Baltimore, Md., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal in an action involving priorities between duplicating warehouse receipts issued by one of the parties, the Foust Distilling Company, on 489 barrels of whiskey. One set of receipts was held by the City Bank and Trust Company of Reading, Pennsylvania (hereafter referred to as "City Bank"). Another set covering the same barrels of whiskey was held by Alvin A. Gould and Robert Gould, partners trading as Robert Gould Company, and Anderson County Distilling Company (hereafter referred to collectively as "Gould"). From an order adjudging the receipts held by City Bank to have priority, Gould has appealed.

The receipts held by City Bank were issued to the Sherwood Distilling Company in 1946. They were negotiable warehouse receipts in which the Foust Distilling Company agreed to hold the whiskey subject to the order of Sherwood and deliver it upon the surrender of the receipts properly indorsed. They were indorsed in blank by Sherwood and in April 1949 were pledged by that corporation as security for a note which it executed to the Philadelphia Acceptance Corporation. This note was paid in May 1949. The receipts, however, were not returned to Sherwood but continued to be held by the Acceptance Corporation notwithstanding Sherwood had asked for their return. In June 1950 the Acceptance Corporation discounted with City Bank a note of Sherwood and pledged as collateral security these receipts, which it had continued to hold. It is under this pledge that City Bank claims prior right in the whiskey covered by the certificates.

The claim of Gould arises under receipts covering the same whiskey, issued by Foust to United Distillers of America, Inc., along with other receipts in July 1949. These receipts were issued in connection with a sale of whiskey by Sherwood to United, after the payment of Sherwood's note to the Acceptance Corporation but while the original receipts covering the whiskey were in the hands of the latter. The 1949 receipts issued to United were purchased from that corporation by Gould in April 1950, and furnish the basis of the Gould claim. It was shown that the stock of both Sherwood and Foust was owned by the same person, who was president of both corporations.

It is clear that the receipts under which City Bank claims, having been issued to the order of Sherwood, are negotiable receipts under the Uniform Warehouse Receipts Act, which was the law in both Maryland and Pennsylvania at the time of the transactions under consideration.[1] Sec. 5 of that act provides that "A receipt in which it is stated that the goods received will be delivered to the bearer, or to the order of any person named in such receipt, is a negotiable receipt". It is equally clear that the receipts under which City Bank claims were issued and negotiated prior to those under which Gould claims. Not only were they issued to Sherwood but they were also indorsed in blank by Sherwood and delivered by Sherwood to the Acceptance Corporation before the Gould receipts were issued. See section 37 of article 14A of Md.Code. 6 Purdon's Penn.Stat. § 157.

The effect of the negotiation of the receipts to the Acceptance Corporation was to vest in that corporation prior right in the whiskey covered by the receipts and this right was not lost

---

[1] In Pennsylvania the Uniform Warehouse Receipts Act has now been superseded by the provision of the Uniform Commercial Code; but what differences there are between the two are immaterial here since the law of the Uniform Warehouse Receipts Act was the law of Pennsylvania at the time of the transaction here under consideration.

by reason of its failure to return the receipts when its note was paid. Sherwood then had the right to the return of the receipts but not to the whiskey covered by them, as though there had been no receipts; and, when the receipts were pledged by the Acceptance Corporation to City Bank, the latter took them with all the rights which arose with respect to them at the time of their issuance. Under section 41 of the Act, sec. 41 of article 14A of Md. Code, 6 Purdon's Penn.Stat. sec. 161, a person to whom a receipt has been duly negotiated acquires not only the title of the person negotiating the receipt but also the title which the depositor had by the terms of the receipt and the obligation of the warehouseman to hold possession for him according to its terms. The fact that the Acceptance Corporation may have acted without authority or even fraudulently in pledging the receipts to City Bank does not defeat the rights of the latter, since it took them for value and without notice of any fraud or breach of duty and is fully protected by section 47 of the act. Section 47 of article 14A of Md.Code, 6 Purdon's Penn.Stat. section 167.

In point is the case of Commercial National Bank of New Orleans v. Canal-Louisiana Bank & Trust Co., 239 U.S. 520, 526–527, 36 S.Ct. 194, 196, 60 L.Ed. 417, wherein the Supreme Court dealt with rights of a bona fide purchaser of warehouse receipts issued pursuant to the terms of the Uniform Warehouse Receipts Act and wrongfully pledged as security for a loan by one to whom they had been entrusted. The court speaking through Mr. Justice (later Chief Justice) Hughes, said:

"* * * the intention is plain to facilitate the use of warehouse receipts as documents of title. Under § 40, the person who may negotiate the receipt is either the 'owner thereof,' or a 'person to whom the possession or custody of the receipt has been intrusted by the owner' if the receipt is in the form described. The warehouse receipt represents the goods, but the intrusting of the receipt, as stated, is more than the mere delivery of the goods; it is a representation that the one to whom the possession of the receipt has been so intrusted has the title to the goods. By § 47, the negotiation of the receipt to a purchaser for value without notice is not impaired by the fact that it is a breach of duty, or that the owner of the receipt was induced 'by fraud, mistake or duress' to intrust the receipt to the person who negotiated it. And, under § 41, one to whom the negotiable receipt has been duly negotiated acquires such title to the goods as the person negotiating the receipt to him, or the depositor or person to whose order the goods were deliverable by the terms of the receipt, either had or 'had ability to convey to a purchaser in good faith for value.' The clear import of these provisions is that if the owner of the goods permits another to have the possession or custody of negotiable warehouse receipts running to the order of the latter, or to bearer, *it is a representation of title upon which bona fide purchasers for value are entitled to rely, despite breaches of trust or violations of agreement on the part of the apparent owner.*" (Italics supplied.)

■ That warehouse receipts first issued and outstanding since date of issuance have priority of right over those subsequently issued on the same property is, of course, well settled. Merchants' Nat. Bank of Baltimore v. Roxbury Distilling Co., D.C., 196 F. 76; Curacao Trading Co. v. Federal Ins. Co., D.C., 50 F.Supp. 441; Id., 2 Cir., 137 F.2d 911, certiorari denied 321 U.S. 765, 64 S.Ct. 521, 88 L.Ed. 1061.

■ Gould argues that the receipts were not negotiable under the terms of the Uniform Warehouse Receipts Act because when delivered to the Acceptance Corporation they were attached to the note that was subsequently paid.

There is no merit in this contention. The receipts were negotiable in form and there was nothing in their attachment to the note as collateral or in its payment to destroy their negotiability. When the loan was paid, they remained negotiable receipts constituting a representation as to title upon which a bona fide purchaser for value was entitled to rely. Commercial National Bank of New Orleans v. Canal-Louisiana Bank & Trust Co. supra.

It is argued, also, that when the Acceptance Corporation's note was paid, title to the whiskey was vested in Sherwood so that the subsequent receipts issued thereon had priority. For this position Gould places reliance chiefly upon two cases, Block v. Oliver 102 Ky. 269, 43 S.W. 238, and Moore v. Thomas Moore Distilling Co., 247 Pa. 312, 93 A. 347, 350. Neither of these cases was decided under the Uniform Warehouse Receipts Act, and neither is in point on the facts here involved. Block v. Oliver was a case where prior receipts were redeemed and came into the possession of the issuer and were reissued after other receipts had been issued covering the same whiskey, and it was held that under such circumstances, where the issuer had regained possession of the original receipts, the duplicates became valid and a subsequent pledge of the originals was ineffective to pass title to the whiskey. In the case of Moore v. Thomas Moore Distilling Co., it was held that as between rival claimants of whiskey covered by certificates issued by a distiller for whiskey stored in his own warehouse, priority was with the holder who first paid value for the certificates. In the case last cited, the court was at pains to point out "these whiskey certificates are not the equivalent of warehouse receipts" and that title was to be determined "by the general law relating to the sale or pledge of personal property". In this case, the certificates never got back into the hands of Foust, the issuer, nor of Sherwood, the depositor of the whiskey. Assuming that Foust and Sherwood are so related that each is to be charged with knowledge of what is known to the other, the knowledge of both is immaterial so far as the rights of City Bank are concerned, since it was a purchaser for value and without notice from the Acceptance Corporation.

Gould relies also upon such cases as Levi v. Booth, 58 Md. 305, 42 Am.Rep. 332, which hold that leaving property in the possession of another does not clothe him with such indicia of ownership as to authorize him to sell or pledge it. This rule, however, has no relation to negotiable warehouse receipts which have been indorsed in blank so that mere delivery carries with it the right to the property which they represent. See Commercial National Bank of New Orleans v. Canal-Louisiana Bank & Trust Co., supra; Mason v. Exporters & Traders Compress Co., Tex.Civ.App., 94 S.W.2d 758; Lundy v. Greenville Bank & Trust Co., 179 Miss. 282, 174 So. 802; Lippincott Distributing Co. v. Peoples Commercial & Savings Bank, 137 Ohio St. 399, 30 N.E. 2d 691. The purpose of the Uniform Warehouse Receipts Act would be largely frustrated if the courts were to hold the negotiability of warehouse receipts to be limited by the old common law rules relating to the sale or pledge of property.

Affirmed.