## In re HARBOR STORES CORPORATION.

District Court, S. D. New York.
Oct. 20, 1939.

750

Scribner & Miller, of New York City (Allan R. Campbell, of White Plains, N. Y., and Louis G. Bernstein, of New York City, of counsel), for claimant Clinton Trust Co.

Bigham, Englar, Jones & Houston, Baldwin, Todd & Young, H. Russell Winokur, Edwards & Smith, Harper Holt, Maclay, Lyeth & Williams, Haight, Griffin, Deming & Gardner, Baer & Marks, White & Case, Koenig, Bachner & Koenig, and Harry M. Gomez-Franco, all of New York City (John M. Aherne, of New York City, of counsel), for various other claimants.

COXE, District Judge.

·This is a petition by Clinton Trust Company to review various orders of a bankruptcy referee in an omnibus reclamation proceeding allowing nineteen reclamation claims and disallowing the claim of the petitioner.

The bankrupt operated a warehouse in New York City, in which some 143,841 bags of cocoa beans were stored. There had been issued against these bags negotiable warehouse receipts considerably in excess of the bags actually in storage. The bankruptcy petition was filed on May 24, 1939, and receivers were placed in charge. The adjudication followed on May 29, 1939, and trustees were subsequently appointed.

Demands were made upon the receivers by various claimants for the delivery of the particular bags called for by their respective warehouse receipts, and on June 16, 1939, the referee, on petition of the receivers, directed that all persons asserting claims to property in the warehouse file their claims by a stated date or be barred. This resulted in twenty-four separate claims being filed for the recovery of bags of cocoa beans. The referee, after exhaustive hearings, at which all of the claimants participated, allowed nineteen of the claims and disallowed five. Included in the disallowed claims was the claim of Clinton Trust Company, which alone of the unsuccessful claimants has petitioned for review.

The referee held that the nineteen successful claimants had traced, identified, and proved ownership of the bags described in their respective warehouse receipts. He accordingly directed that these bags be turned over to the nineteen different claimants. This completely accounted for all of the cocoa beans on storage in the warehouse.

The claim of Clinton Trust Company was based entirely on three warehouse receipts covering a large number of the bags identified as belonging to some of the successful claimants. It was held that these "duplicating" warehouse receipts were issued fraudulently, and attached to none of the bags of the successful claimants. The claim of Clinton Trust Company was, therefore, disallowed.

The warehouse operated by the bankrupt had, prior to February 15, 1939, been conducted by Insular Terminal Corporation, a company of which Carlos G. Garcia was the president and active head. Eighteen of the nineteen successful claimants actually placed in this Insular warehouse the various bags of cocoa beans now sought to be recovered, and received

therefor valid negotiable warehouse receipts of the Insular Corporation for their respective deposits. On February 15, 1939, the Insular Corporation leased the warehouse to the bankrupt, and these eighteen claimants thereafter surrendered their Insular receipts, and received in exchange identical negotiable warehouse receipts of the bankrupt. The other successful claimant deposited bags of cocoa beans in the warehouse after it had been taken over by the bankrupt, and received only the negotiable warehouse receipt of the bankrupt.

The warehouse receipts held by the Clinton Trust Company were also issued by the bankrupt in exchange for warehouse receipts previously issued by the Insular Corporation. These latter receipts had been given to the Trust Company as collateral for an indebtedness of Garcia Sugars' Corporation and its associated companies amounting to over $500,000. Garcia, the president of the Insular Corporation, was also in complete control of the Garcia companies. The indebtedness to the Trust Company was of long standing and had originally been secured by warehouse receipts of the Insular Corporation for approximately 104,269 bags of sugar.

Garcia had, however, sold most of this sugar out of the warehouse without taking up the warehouse receipts at the Trust Company. This left the Trust Company with wholly inadequate security for its indebtedness. There was evidence that the Trust Company knew of the shortage as early as December, 1937. Yet nothing was done to remedy the situation until December, 1938, when Garcia agreed to substitute cocoa beans for the sugar collateral. Garcia then had the Insular Corporation issue three non-negotiable warehouse receipts purporting to cover 78,134 bags of cocoa beans, which he gave to the Trust Company. These were the receipts which were later exchanged for the negotiable receipts now held by the Trust Company. Garcia testified that the Garcia Sugars' Corporation did not own the cocoa beans covered by the receipts, but that they belonged to various depositors in the warehouse.

The evidence offered by the successful claimants clearly established ownership of the bags described in the different receipts. The history of the bags was in each case meticulously traced from the place of origin to the warehouse; it was shown that the bags of each depositor were stored and piled separately in the warehouse apart from the bags of other depositors; and the particular bags called for by each receipt were identified among the bags found in the warehouse.

It is undisputed that the warehouse receipts originally given to the Trust Company were fraudulently issued by the Insular Corporation. They stood for no actual deposits of cocoa beans in the warehouse by any of the Garcia companies or by the Trust Company but were mere duplicating receipts purporting to cover property clearly shown to belong to others. These fraudulent receipts were complete nullities as against the real owners of the goods. Whitney v. Wenman, D. C., 140 F. 959; Barnes v. Patrick, 176 Wash. 142, 28 P.2d 293, 91 A.L.R. 901; First Nat. Bank of Toledo v. Shaw, 61 N.Y. 283, 297. And their subsequent exchange for warehouse receipts of the bankrupt in no way changed their character. Merchants' Nat. Bank of Baltimore v. Roxbury Distilling Co., D.C., 196 F. 76. The cases involving fungibles have no application, as there was no commingling here of the bags of the different claimants. Neither is there any basis for an estoppel against the real owners of the property. Interstate Banking & Trust Co. v. Brown, 6 Cir., 235 F. 32, certiorari denied 242 U. S. 632, 37 S.Ct. 15, 61 L.Ed. 537. Nor is the good faith of the Trust Company at all material. Whitney v. Wenman, supra.

It is insisted by the Trust Company that the Insular receipts were exchanged for receipts of the bankrupt pursuant to a common plan which was assented to by all of the receipt holders, and that, therefore, all receipt holders became entitled to share in the common pool of bags of cocoa beans left in the warehouse. The difficulty with this contention is that it finds no support whatever in the record. Smith, the president of the bankrupt, when called as a witness for the Trust Company, testified that he knew nothing about any such common plan or arrangement; and the whole manner of the exchange indicates that there was no concerted action by the receipt holders but that each acted separately without any idea of surrendering any existing rights.

The Trust Company further contends that it was unduly restricted in its

proof before the referee. The record shows, however, that the Trust Company was given a wide latitude in putting in its case, and I do not think that any error was committed in the exclusion of evidence. The hearings on the claims of all of the claimants consumed a considerable period of time, and on July 17, 1939, counsel for the Trust Company announced that he was through with his case on cocoa beans. The hearings thereafter continued, principally with respect to molasses, and on July 21, 1939, counsel for the Trust Company again took the position that he had nothing further to offer on cocoa beans, except possibly something he had "inadvertently forgotten". Then on August 4, 1939, a notice was served on behalf of the Trust Company that it would offer further testimony on August 7, 1939, with respect to cocoa beans. The orders awarding cocoa beans to the successful claimants had for the most part all been signed prior to August 4, 1939; this was in accordance with the terms of the omnibus order of June 16, 1939, which provided for separate orders from time to time determining claims. At the hearing on August 7, 1939, the referee, however, permitted the Trust Company, over objection of the successful claimants, to introduce additional testimony on the question of good faith, and on August 8, 1939, the order was signed dismissing the Trust Company's claim. I am satisfied from this showing not only that the Trust Company was not unduly restricted in its proof, but that further evidence along the lines indicated in the offer would have been immaterial, and would in no way have affected the result.

The petition of Clinton Trust Company to review the various orders of the referee is in all respects denied, and the different orders affirmed.