## CURACAO TRADING CO., Inc., v. FEDERAL INS. CO.

District Court, S. D. New York.

July 1, 1942.

---

See, also, 40 F.Supp. 846; 2 F.R.D. 265.

Gustave Simons, New York City (Theodore E. Wolcott, of New York City, of counsel), for plaintiff.

Bigham, Englar, Jones & Houston, of New York City (John M. Aherne, of New York City, of counsel), for defendant.

CLANCY, District Judge.

Plaintiff sues on defendant's floating import policy insuring against physical loss or damage from any external cause, including non-delivery. By a certificate issued April 3, 1939 in accordance with the usage of the trade, this policy was made to apply to a lot of cocoa beans described by bag numbers and quality marks copied into the certificate from warehouse receipts therefor issued to it by the warehouseman; one of them on April 3rd and the others on March 31st, 1939. The policy and certificate are one for the purpose of interpretation or construction. Brandyce v. Globe & Rutgers Ins. Co., 252 N.Y. 69, 168 N.E. 832. The warehouse was adjudicated a bankrupt and title and right to possession to all the cocoa beans in it were determined to belong to others than the plaintiff and the beans delivered to them.

Defendant moves for summary judgment. One issue of fact asserted by the plaintiff is the agency of the broker but to take that out of the case, though we would find him plaintiff's agent, we will assume, for the purpose of this decision, that he was defendant's. One McMackin was secretary of the warehouse corporation during March and April, 1939. The defendant has submitted his affidavit in which he sets forth the result of his examination of the warehouse records which he says were kept in the regular course of business. They trace every ounce of cocoa beans bearing the marks identifying the beans in which plaintiff claims a security interest, found in the warehouse upon the adjudication in bankruptcy through all the time from their original receipt by the warehouse. They show the issuance by it of warehouse receipts against every bag before the issuance of plaintiff's receipts. They trace the history of these warehouse receipts, reciting every assignment and the affidavit states that the holders of the receipts were adjudicated the owners of the merchandise in the bankruptcy reclamation proceeding. The plaintiff appears nowhere in their history. The plaintiff submits an affidavit by the same McMackin, saying that he is not personally able to vouch for the exactness and truth of the warehouse records showing that they were kept by others and that the original records, such as delivery receipts, were entirely beyond his knowledge. This in no way invalidates the records as evidence. They speak for themselves and, being kept in the regular course of business, are entitled to recognition as evidence and they stand uncontradicted in any respect whatever by any allegation of fact made in any of the plaintiff's affidavits. In this affidavit McMackin refers to an inventory alleged to show a "floating holding" by plaintiff's pledgor of a quantity of cocoa beans exceeding the quantity insured, which inventory the bankrupt warehouse company received from its predecessor owner of the warehouse. This cannot be regarded for its authorship is not given and it now appears to have been lost. In any event its alleged contents do not attempt to contradict the actual authentic records kept in the operation of the business. Plaintiff does not attempt to create any issue on the issuance by the warehouse earlier than his of receipts covering all the cocoa beans bearing the marks recited in his receipts and asserts no right or interest under any of the earlier receipts at any time and especially on April 3, 1939. We, therefore, conclude that for the purpose of a motion for summary judgment, no issue of fact is established as to the true ownership and right to possession of all such cocoa beans in the warehouse on the day when the certificate of insurance issued. Whether or not the plaintiff had an insurable interest on that day, which was April 3, 1939, is a question of law. If it did not exist, then his policy is invalid. New York Insurance Law, § 148, Consol.Laws N.Y. c. 28. If the contract was good on that day then plaintiff can collect whenever he can show he suffered an insured loss. An insurable interest is "any lawful and substantial economic interest in the safety or preservation of property from loss, destruction or pecuniary damage." New York Insurance Law, § 148. The certificates issued to the plaintiff gave him no interest in any cocoa beans in the warehouse. They were nullities as documents evidencing any right to possession or ownership of any of the merchandise described in them. First National Bank of Toledo v. Shaw, 61 N.Y. 283. They constitute choses in action that made the warehouseman liable for damages but conferred upon the plaintiff no interest whatever in the merchandise. General Business Law, §§ 99 and 106, Consol.Laws N.Y. c. 20. Another owned all of the merchandise in the warehouse and had a right to immediate possession absolute as against this plaintiff. Plaintiff, therefore had no lawful interest in its safety or its preservation, New York Insurance Law, § 148, there being a complete absence of any contractual or other relationship between it and the owner and hence had no insurable interest in it. Plaintiff claims that by the usage of the trade the delivery to his gauger of fifty pounds for test is accepted as a symbolic delivery of the merchandise described in his fraudulent receipt. We give this contention no weight. Clements v. Yturria, 81 N.Y. 285; Irving Trust Co. v. Densmore, 9 Cir., 66 F.2d 21.

Plaintiff insists that "non-delivery" bears an interpretation that will sustain his claim of damages on the policy as one of "indemnity insurance." He submits an affidavit which states a number of conversations had with the individual whom we have assumed to be defendant's agent prior to the issuance of the certificate and purporting to sustain an alleged agreement between the parties, for the issuance of a policy insuring delivery of the entire lot of cocoa beans against all contingencies

including the warehouseman's default. We find little literature treating of "non-delivery" as an insurance risk. It appears, though that for fifteen years and maybe longer it has been employed as a word of art in insurance policies. It has been defined in Winter on Marine Insurance, (1929) (p. 163) as including casual and unexplained losses of items included in shipments occurring in the course of their transportation and delivery. Thus understood, it constitutes a recognizable risk for incorporation into an insurance policy. The phrase which forms the context of the word here and is typed on the certificate says: "This is to certify that on April 3, 1939 this company insured under policy #0–54711 for Curacao Trading Co. Inc. on 18,480 bags cocoa beans." The policy itself requires payment by the insurer within thirty days "after proof of loss, and proof of interest in the property hereby insured." It would seem conclusive from this that the risk described by the word "non-delivery" was understood by the parties themselves to be a risk of the merchandise and that only losses to merchandise in which the insured had an insurable interest were contemplated by them when the certificate under the policy was issued, which extends the policy's coverage to definite cocoa beans. Plaintiff asks us to conclude that the use of the word "non-delivery" in the risk clause incorporates in the policy a provision for indemnity insurance—to use his own phrase. The same phrase is used by Cooley, p. 319, interchangeably with "guaranty insurance." If the plaintiff claims the policy is one to indemnify against any warehouseman's infidelity or non-performance, we can find nothing to sustain him except an interest in the contract embodied in his warehouse receipt and to fix any liability upon the defendant, based on that interest, we must ignore the explicit language of the insurance contract which requires an insurable interest in goods and rewrite the policy to include indemnity for breach of the contract in whose performance he has an interest. Plaintiff itself apparently in its brief recedes, as it must in the face of the language of the insurance contract, from any claim based on the theory that the defendant contracted a surety's obligation for the performance of a defaulting warehouseman's agreement.

■ The case, therefore, comes down to this: "Non-delivery" in the policy is a word of art or it is not. As a word of art, it does not include the plaintiff's claim but makes the contract coherent and intelligible. If it is not, its ordinary meaning will contradict the clauses providing that loss shall be paid only on proof of interest in the property insured and the language of the certificate that the defendant "do make insurance and cause to be insured * * * on merchandise * * *." The rule is that "the court will, if possible, give effect to all parts of the instrument and an interpretation which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable." Williston on Contracts, § 619; Restatement of the Law, Contracts, § 236 (a); Merrill-Ruckgaber Co. v. United States, 241 U.S. 387, 36 S.Ct. 662, 60 L.Ed. 1058; Fleischman v. Furgueson, 223 N.Y. 235, 119 N.E. 400.

■ The evidence of prior conversation about its intentions tendered by the plaintiff would, therefore, be incompetent since it is intended not to explain but to contradict the instrument upon which suit is brought.

■ The complaint has numerous allegations of oral warranties about the nature and extent of the coverage of the insurance contract. We do not believe the definition of words or of language can be the subject of a warranty, for a warranty is an affirmation of fact. A statement of the meaning of the language of an insurance contract is not a statement of fact. We think consideration of this claim of the plaintiff would be an invasion of the rule which conclusively presumes that a written contract merges all the negotiations had by the parties to it. The same answer might be made to any claim the plaintiff would attempt to base on the defendant's alleged declarations considered as misrepresentations. Both parties were in possession of the written agreement and knowledge of its contents was equally accessible to both. Its meaning is a matter of opinion or of judgment and not the subject of either warranty or misrepresentations.

■ Plaintiff is charged with understanding the ordinary meaning of words and enjoys the protection of the law which would interpret any vague expression in an insurance policy to his advantage. Despite the fact that the language construed in Nieschlag & Co. v. Atlantic Mutual Insurance Co., D.C., 43 F.Supp. 797, differs somewhat from that of the contract here and some other minor differences in the cases, we would have rested our decision

here on that case were we not compelled to answer the different and additional contentions which the plaintiff here made.

We think the complaint must be dismissed.