## CURACAO TRADING CO., Inc., v. FEDERAL INS. CO.

### No. 286.

Circuit Court of Appeals, Second Circuit.

Aug. 18, 1943.

---

[3] See the appellant's appendix pp. 12a and 13a.

See, also, 3 F.R.D. 203.

Gustave Simons, of New York City (Theodore E. Wolcott, of New York City, of counsel), for plaintiff-appellant.

Bigham, Englar, Jones & Houston, of New York City (John M. Aherne, of New York City, of counsel), for defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff in this action, the Curacao Trading Company, Inc., is a Netherlands corporation engaged in the import and export business in this country. On July 31, 1935, it obtained through William Stake & Company, Inc., an insurance brokerage corporation, an open policy of marine cargo insurance from the defendant, the Federal Insurance Company. The policy provided, among other things, for insurance "against physical loss or damage from any external cause, including non-delivery, * * *" and it also stated that "William Stake & Co., Inc., are the assured's brokers and agents and that this policy shall be continuous and covers subject to its terms * * *". On April 3, 1939 this policy was made to apply to 18,480 bags of cocoa beans which were understood to be located at Harbor Stores Corporation in Long Island City, New York. Coverage of the beans was made in the usual way by the issuance of a certificate which described the beans and which declared that the certificate was issued under the policy and subject to its terms.

Curacao desired insurance protection because of an agreement it had made with the Garcia Sugars Corporation whereby Curacao loaned Garcia a substantial sum of money against the security of the cocoa beans which were supposed to be in the Harbor Stores Warehouse. The agreement for the loan also warranted title in Garcia free and clear of all encumbrances and provided that the beans should be of a

quality acceptable on the New York Cocoa Exchange. Curacao, which had received warehouse receipts for the cocoa, delivered these to the Grace Bank along with the insurance certificate in order to borrow the money which was then advanced to Garcia; and the bank then re-delivered the warehouse receipts and the insurance certificate to Curacao, having taken trust receipts in their stead. The security value of the cocoa beans was protected by a hedging operation by the sale of cocoa futures on the Exchange so that the only risk that Curacao undertook was that of the ownership of the beans themselves by Garcia. Curacao, however, claims that the defendant, the Federal Insurance Company, assumed that risk by the issuance of its certificate under the policy and from a course of dealing among those connected with the issuance of the certificate.

It is undisputed that conferences were had about the very transaction in controversy between Franz Vandervygh, the co-manager of Curacao, and James Christie, vice-president of Stake. After learning of the details of the Garcia contract in its unsigned form, Christie consulted William Bonner of Chubb & Son which acted as the manager of the defendant; and Bonner approved an extension of the coverage under the policy from $75,000 to $100,000. This much is conceded by the defendant. But the plaintiff alleges that more occurred in the conversations between Christie and Vandervygh and that Christie warranted that the honesty of the warehouse as well as the physical loss of the cocoa beans was covered by the insurance certificate issued under the policy or, alternatively, by a separate insurance policy in the form of the certificate. To substantiate this claim the plaintiff has shown that Stake had the power to countersign this certificate and others and had, from time to time, countersigned certificates which varied the risks in basic insurance policies. On one occasion, for example, Stake added war risk insurance to a policy held by Curacao. From this the plaintiff concludes that Stake had unlimited authority to bind the defendant in respect to the insurance.

Be that as it may, the plaintiff accepted the certificate as issued and the only question before us is whether the plaintiff was protected by what happened subsequent to the issuance of this certificate. On May 25, 1939, the plaintiff made a written demand on the warehouse which was refused.

Shortly thereafter both Harbor Stores Corporation and Garcia Sugar Corporation were adjudicated bankrupts and it was discovered that there was an insufficient amount of cocoa to correspond to the many warehouse receipts issued against what cocoa was actually kept in the warehouse. The plaintiff participated in the omnibus reclamation proceedings which followed to determine which of the many claimants was entitled to the cocoa; and plaintiff's claim was rejected on the ground that it was not "the owner of or entitled to the possession of any bags of cocoa beans in the warehouse." Thereafter this order was resettled so as to provide that the plaintiff had no interest in the beans superior to the adverse claimants so that plaintiff's action against this defendant would not be prejudiced. See In re Harbor Stores Corporation, D.C., 33 F. Supp. 360.

The defendant's motion for summary judgment was granted by the court below on the ground that "non-delivery" as used in the basic policy and as incorporated in the certificate issued thereunder only protected the plaintiff against the physical loss of the beans themselves and that it did not include a guarantee of the honesty of the warehouse. It was also held that evidence of prior conversations which tended to show that this meaning was not intended by the parties was inadmissible in that such conversations would contradict the instrument upon which suit was brought and that the meaning of an insurance contract was not the subject of an actionable warranty. Moreover, it was held that the plaintiff had no insurable interest in the beans since the true ownership of these had been satisfactorily traced in proceedings to which the plaintiff was a party. The plaintiff takes issue with all these conclusions and submits, further, that there were disputable questions of fact which could not be determined on a motion for summary judgment and that inadmissible evidence was used against the plaintiff in the finding that the plaintiff did not own the beans.

It is clear enough that the term "non-delivery" as used in this insurance policy and in the certificate which extended its protection to these cocoa beans did not give to the plaintiff a cause of action for the loss it suffered under these circumstances. By plain language the policy

was limited to protection against "physical loss or damage from any external cause" and did not include protection against loss which resulted from the issuance of spurious warehouse receipts. To conclude otherwise would be to change a policy of property insurance to one comparable to a guaranty of the warehouseman's obligation to deliver; and this we have already refused to do in a similar policy on which another brought an action to recover for losses it had undergone as the holder of spurious warehouse receipts issued by the same company. Nieschlag & Co. v. Atlantic Mut. Ins. Co., D.C., 43 F.Supp. 797, affirmed, 2 Cir., 126 F.2d 834.

 In pressing the defendant's liability the plaintiff has also argued that the certificate did not mean what it said and was extended by Stake in the conversations between Christie and Vandervygh. The plaintiff asserts that Stake was defendant's agent, although the policy itself expressly declares the contrary, and that Stake was authorized to change policies issued by the defendant. The essential claim, then, is that the defendant authorized Stake to waive express provisions in the policy and that the defendant is now estopped from saying that Stake was the assured's agent or that "non-delivery" has the restricted meaning it usually has. The position taken by the plaintiff is of course necessary to its cause because in the absence of waiver of the provision that Stake was assured's agent any oral contracts or collateral warranties made by Stake are ineffective to create liability against the defendant. Drennan v. Sun Indemnity Co. of New York, 271 N.Y. 182, 2 N.E.2d 534; Allen v. German-Amer. Ins. Co., 123 N.Y. 6, 25 N.E. 309. But plaintiff's position is untenable in that the course of conduct said to establish the waiver shows merely either that Stake was authorized to countersign certificates, the sole effect of which was to declare the existence of the insurance which, of course, did not vary the terms of the policy; or that Stake had in some instances extended the coverage of policies issued by the defendant to include such risks as war risk which again did not change the nature of the insurance but only amplified the kind of events which would fix the insurer's liability within the existing coverage. But even if Stake did have such authority as was shown to have been exercised it cannot also be assumed that Stake could bind the defendant by de-

parting entirely from the policy which only gave protection against physical loss, defined by its terms to include non-delivery, to include an entirely different risk such as the warehouseman's honesty. There was consequently no genuine issue of fact on this question.

██ Nor was there error in the two intermediate orders. The order refusing to add Stake as a party defendant to this action was a matter of discretion for the district court and in the absence of a showing of abuse will not be disturbed. Rules of Civil Procedure 20 and 21, 28 U.S.C.A. following section 723c. And the order retaxing the costs to the plaintiff on a deposition which was not used was not erroneous. Federal Deposit Ins. Corp. v. Fruit Growers Serv. Co., D.C., 2 F.R.D. 131.

Affirmed.