## CURACAO TRADING CO., Inc., v. WILLIAM STAKE & CO., Inc.

District Court, S. D. New York.
June 5, 1945.

See, also, 2 F.R.D. 308.

Gustave Simons, of New York City (Robert K. Story, Jr., of New York City, of counsel), for plaintiff.

Bigham, Englar, Jones & Houston, of New York City (John M. Aherne, of New York City, of counsel), for defendant.

COXE, District Judge.

This is a motion by the defendant for summary judgment in its favor.

The action is against an insurance brokerage corporation for damages of $109,-674.13 for breach of warranties alleged to have been made by the defendant in connection with the placing of certain insurance for the plaintiff with an insurance company. In a prior action against the insurance company on the insurance policy,

the plaintiff failed to recover solely because it had no insurable interest in the subject matter of the insurance. Curacao Trading Co. v. Federal Ins. Co., D.C., 50 F.Supp. 441, affirmed, 2 Cir., 137 F.2d 911; certiorari denied 321 U.S. 765, 64 S.Ct. 521, 88 L.Ed. 1061.

The underlying facts are not in dispute. On July 31, 1935, the defendant obtained from Federal Insurance Company, on the plaintiff's behalf, an open policy of marine cargo insurance, which, by its terms, covered coffee, cocoa, etc., and insured "against physical loss from any external cause, including non-delivery * * *". The policy contained a provision requiring the assured to report and declare all risks promptly. There was also a provision reading: "It is a condition of this policy that William Stake & Co. Inc. are the assured's brokers and agents and that this policy shall be continuous". By another provision, the policy was extended "to cover cocoa * * *, the property of the assured * * *, while temporarily detained anywhere within the limits of the United States * * * in stores or warehouses * * * submitted to or approved by this company" against the risks of fire, lightning, etc. Imported merchandise in which the insured had an interest was automatically covered in any warehouse to the amount of $75,000, but for coverage in excess of $75,000 the warehouse had to be approved by the insurance company. The policy was delivered to and accepted by the plaintiff upon its issuance, and hundreds of risks were insured under it prior to the one involved in the present action.

On March 31, 1939, the plaintiff entered into a written agreement with Garcia Sugars Corporation, under which the plaintiff agreed to loan to Garcia Sugars Corporation approximately $90,000 against the security of certain cocoa supposed to be in a warehouse. One of the paragraphs of this agreement provided: "Curacao Trading Company Inc. agrees to do financing in connection with certain cocoa which Garcia Sugars Corporation represents and warrants is now stored in warehouses, licensed by the New York Cocoa Exchange, and that said cocoa is owned by Garcia Sugars Corporation and is free and clear of all encumbrances of any kind whatsoever, and of quality tenderable on the New York Cocoa Exchange".

Another paragraph of the agreement provided for sampling of the cocoa by a licensed sampler, and for "insurance against fire, theft and non-delivery, and other perils, such insurance to be procured by Curacao Trading Company Inc., * * *".

Pursuant to this agreement, the plaintiff caused certain cocoa stored in a warehouse of Harbor Stores Corporation, located at Long Island City, N. Y., to be sampled and graded, and found that it was of the quality required. The report of the cocoa grader is dated April 3, 1939, and on the same day Garcia Sugars Corporation delivered to the plaintiff three warehouse receipts of Harbor Stores Corporation purporting to cover 18,-480 bags of cocoa beans, and received from the plaintiff the sum of $90,500 as required by the agreement.

Before the money was advanced, Vandervygh, co-manager of the plaintiff, had various talks with Christie, vice-president of the defendant, and showed him in its unsigned form the agreement about to be entered into with Garcia Sugars Corporation. Clearly, after seeing this agreement, Christie was justified in believing that Garcia Sugars Corporation owned the cocoa against which the loan was to be made. And it is unthinkable that Vandervygh could have had any different belief, otherwise he would hardly have been willing to commit his company to the agreement at all.

Although the open policy provided automatic coverage for the cocoa as soon as the loan was made, it was necessary for Vandervygh to consult with his insurance broker regarding the transaction for two reasons, namely, (1) because the plaintiff needed an insurance certificate to evidence to Grace National Bank, from which it was borrowing the money, that the cocoa was insured, and (2) because it was necessary to obtain the approval of the warehouse in which the cocoa was stored, since the policy did not cover in excess of $75,000 unless the warehouse was approved by the insurance company.

After receiving the warehouse receipts from Garcia Sugars Corporation, the plaintiff communicated with the defendant by telephone the description of the cocoa and the numbers of the warehouse receipts. From this information the certificate of insurance was prepared, certifying the existence of insurance under the open policy and subject to its terms. The certificate was delivered to the plaintiff on April 3, 1939, and was accepted without objection. The defendant also obtained an extension.

of the coverage of the policy from $75,000 to $100,000.

No question arose with respect to the insurance until after the Harbor Stores Corporation was adjudicated bankrupt by this court on May 29, 1939, when it was discovered that spurious warehouse receipts had been issued by the warehouse for an amount of cocoa greatly in excess of that actually in storage, and that Garcia Sugars Corporation had been a party to the fraud. The plaintiff thereupon filed a claim for the recovery of the cocoa described in its receipts, and in omnibus reclamation proceedings in the bankruptcy it was found that all of the cocoa in the warehouse was owned by others than the plaintiff, and was awarded to them. In re Harbor Stores Corporation, D.C., 29 F.Supp. 749; Id., D.C., 33 F. Supp. 360. Later, in the action against the insurance company, the plaintiff sought to spell out some kind of an interest in the cocoa covered by the receipts, but it was held that no such interest existed because Garcia Sugars Corporation never had any cocoa in the warehouse. Curacao Trading Co. v. Federal Ins. Co., D.C., 50 F.Supp. 441, affirmed 2 Cir., 137 F.2d 911.

The amended complaint describes in detail the transaction with Garcia Sugars Corporation, including the receipt of the three warehouse receipts and the payment of the $90,500; it alleges that the plaintiff deemed the defendant an expert in the insurance field, and relied upon it as such; and, further, that before the advance was made the plaintiff advised the defendant of its contemplated transaction with Garcia Sugars Corporation, and its desire to secure insurance against every possible risk. The issuance of the certificate of insurance under the open policy is alleged, and copies of both instruments are annexed to and made part of the pleading.

It is then alleged that the defendant "warranted" to the plaintiff (1) that the insurance was "validly issued and that plaintiff had an insurable interest therein"; (2) that the plaintiff was "fully insured * * * against any and all risks" relating to the cocoa; (3) that if the plaintiff did not receive the cocoa described in the warehouse receipts, it would obtain the insurance money; (4) that the plaintiff was insured against nondelivery of the cocoa "for any reason", "including dishonesty on the part of the warehouseman"; and (5) that "no investigation of the title of Harbor Stores Corporation to the cocoa * * * was necessary", and "no investigation back of said receipts was required".

The remainder of the pleading is devoted largely to the events which transpired after April 3, 1939, the date of the issuance of the certificate of insurance, i. e., the bankruptcies of Garcia Sugars Corporation and Harbor Stores Corporation, the disallowance of the plaintiff's reclamation claim in the Harbor Stores case, the loss alleged to have been sustained by the plaintiff amounting to $109,674.13, and the refusal of the insurance company to pay the plaintiff's claim. Paragraph 29 reads as follows: "That on or about April 3, 1939, and at all times up to and including the date of loss hereinafter described, plaintiff and aforesaid Grace National Bank each believed that they had a bona fide insurable interest in the subject of the insurance * * *".

Paragraph 55 reads: "Upon information and belief, that the aforesaid policy and undertakings of Federal were void and unenforceable because they did not attach to the risk, were not validly issued, were issued pursuant to a mutual mistake of fact and/or plaintiff had no insurable interest and, accordingly, Federal has refused and still refuses to make payment under and by virtue of the terms of said policy and undertakings on its part".

The answer admits many of the allegations of the amended complaint, but denies that the defendant made any of the warranties alleged by the plaintiff, or that it is in any way liable to the plaintiff. It also sets up a number of affirmative defenses. One of these defenses alleges that in a prior action between the parties in this court involving the same issues, 2 F.R.D. 308, a final adjudication was rendered in favor of the defendant, and that the plaintiff is now estopped from maintaining the action. Another defense alleges that at the time the certificate of insurance was issued "plaintiff and defendant believed that plaintiff had an insurable interest in the cocoa beans described in the said certificate", and that "the said certificate of insurance * * * was caused to be issued by the plaintiff and the defendant herein under a mutual mistake of fact".

The defendant makes two contentions in support of the motion for summary judgment, namely, (1) that a judgment in favor of the defendant in a prior action between the parties is res judicata of the issues, and (2) that, irrespective of the prior judg-

ment, the plaintiff still cannot succeed in the action.

■ First, as to the judgment in the prior action: This prior action, entitled "Curacao Trading Company v. William Stake & Company, Inc.", D.C., 2 F.R.D. 308, was commenced in this court on September 12, 1941, and a copy of the complaint is attached to the moving papers. The parties, the cause of action, and the allegations in the prior action are the same as in the case at bar. Indeed, the allegations of the complaint in the prior action are almost word for word identical with the corresponding allegations of the present amended complaint. The only differences in the two complaints are either verbal, or plainly insubstantial.

In the prior action, the defendant moved before answer under Rule 12(b) (6), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to dismiss the complaint for failure to state a claim. This motion was granted over the opposition of the plaintiff, with leave to amend. Curacao Trading Co. v. William Stake & Co., D.C., 2 F.R.D. 308. An order was thereupon entered on December 30, 1941, dismissing the complaint and allowing the plaintiff thirty days within which to serve and file an amended complaint. No amended complaint was ever served or filed, and on March 10, 1942, a judgment was entered adjudging that "the above entitled action be and the same hereby is dismissed". Under Rule 41(b), this judgment was an adjudication upon the merits, and no appeal therefrom was ever taken by the plaintiff.

■ The judgment in the prior action is clearly res judicata of the issues in the present action. The motion to dismiss under Rule 12(b) (6) for failure to state a claim is the equivalent of a demurrer at common law; it admits for the purpose of the motion, all well pleaded facts of the complaint. American Viscose Corporation v. Rothensies, 3 Cir., 121 F.2d 186, 188; Cohen v. United States, 8 Cir., 129 F.2d 733, 735, 736. And it is settled that a sustained demurrer, and a judgment entered thereon, is a bar to a subsequent action, based upon the same facts. Gould v. Evansville & C. R. Co., 91 U.S. 526, 534, 23 L.Ed. 416; Northern Pac. R. Co. v. Slaght, 205 U.S. 122, 130–133, 27 S.Ct. 442, 51 L.Ed. 738; Joannes Brothers Co. v. Lamborn, 237 N.Y. 207, 209, 142 N.E. 587. This is true not only when leave to amend is not granted, Joannes Brothers Co. v. Lamborn, supra; Goldfarb v. Wright, 2 Cir., 135 F. 2d 188, 189, but a fortiori when leave to amend is granted and not availed of. See Northern Pac. R. Co. v. Slaght, supra. Here, the facts are identical in both actions, and the prior judgment is a bar to the present action. It is no answer that the plaintiff's action against the insurance company has only recently been determined, for it was not necessary for the plaintiff even to allege or show that it had brought suit against the insurance company. Scharles v. N. Hubbard, Jr. & Co., 74 Misc. 72, 131 N.Y.S. 848.

■ Second, as to the merits: It will be seen from the foregoing summary of the amended complaint that the plaintiff bases its claim entirely on allegations that the defendant "warranted" that the policy provided certain coverage with respect to the cocoa. In the law of sales, warranty usually means an affirmation of fact (Williston on Sales, 2d Ed., Vol. I, §§ 194, 197), and presumably the term is used in that sense in the amended complaint. The alleged "warranties" are not, however, affirmations of fact; they are mere expressions of opinion as to the legal effect of the language of the policy. And, as expressions of opinion, they were clearly correct if Garcia Sugars Corporation owned the cocoa which it represented that it owned in its loan agreement with the plaintiff. But Garcia Sugars Corporation did not own the cocoa, and it was for that reason that the plaintiff was unable to show that it had any insurable interest to support its action against the insurance company. In effect, therefore, what the plaintiff is now asserting is that the defendant guaranteed the title of Garcia Sugars Corporation to the cocoa—a fact which is neither alleged nor supported in the slightest degree by the evidence.

■ The plaintiff further contends that the defendant "warranted" that the policy covered the validity of the warehouse receipts. This is not alleged in the amended complaint, but the plaintiff points to isolated parts of the testimony of Vandervygh and Christie relating to their talks prior to April 3, 1939, in support of the contention. Thus, Vandervygh in his testimony was asked if he told Christie that he (Vandervygh) "didn't know whether the warehouse receipts were valid or not", and Vandervygh answered as follows: "Yes sir. We

told him that we had absolutely no information about the reliability or honesty of the warehouse, and that therefore we wanted specifically to be protected against non-delivery and non-fulfillment of the promise of the warehouse to deliver us the cocoa whenever we had to call for it in the future; and we requested him to take this up with the insurance company and get us full protection." And Christie in his testimony said that Vandervygh told him "that he was going to loan Garcia some $90,000, and that he intended to replenish his bank account by pledging with a bank the collateral security which he would receive in exchange for his loan * * *". Surely, there is nothing in this testimony to lend any support to the contention that the defendant warranted the validity of the warehouse receipts.

The question remains whether the action can be maintained as an action for negligence despite the failure of the plaintiff to allege negligence on the part of the defendant. See Seaboard Terminals Corporation v. Standard Oil of New Jersey, 2 Cir., 104 F.2d 659; Downey v. Palmer, 2 Cir., 114 F.2d 116. This failure to allege negligence was not inadvertent but deliberate, after earlier complaints based entirely on warranties had been severely criticized by this court. Curacao Trading Co. v. William Stake & Co., supra, 2 F.R.D. 308; Curacao Trading Co. v. Federal Ins. Co., D.C., 3 F.R.D. 203. And, even now, the plaintiff does not intimate that the action should be treated as one of negligence. But in any event, the facts are insufficient to support a claim of negligence. The policy covered all risks, and failed only because Garcia Sugars Corporation did not own the cocoa, which both the plaintiff and the defendant believed that it owned. It would be a strange rule, therefore, to fasten negligence on the defendant under such circumstances. I do not think, either, that the testimony of Vandervygh, already referred to, in which he said that he told Christie that he (Vandervygh) "didn't know whether the warehouse receipts were valid or not", is any evidence of negligence on the part of the defendant, for the policy fully covered the cocoa, regardless of the warehouse receipts, if the cocoa had been owned by Garcia Sugars Corporation. I do not think, therefore, that any further amendment to allege negligence is justified.

The motion of the defendant for summary judgment in its favor is granted.